# ANNA M. CONNELLY v. BARNETT & RECORD COMPANY.[1]

November 17, 1911.

Nos. 17,320—(70).

**Death of servant — negligence — questions for jury.**

The plaintiff's intestate, while in the employ of the defendant as foreman or signalman of a derrick crew, was killed by the breaking of the boom stick by reason of the improper adjustment of the becket line. *Held,* that the questions of the negligence of the defendant, the contributory negligence of the intestate, and whether he assumed the risks, were each made by the evidence a question of fact, and, further, that the trial court committed no reversible error in its charge to the jury.

Action in the district court for St. Louis county by the administratrix of the estate of Joseph J. Connelly, deceased, to recover $5,000 for the death of her intestate. The case was tried before Ensign, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying defendant's motion in the alternative for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Theo. Hollister* and *J. A. P. Neal,* for appellant.

*Samuel A. Anderson, Warner E. Whipple,* and *E. J. Kenny,* for respondent.

START, C. J.

On January 1, 1910, the plaintiff's intestate was in the employ of the defendant as foreman or signalman of a derrick crew, who were then engaged in taking down, by the use of a large hoisting derrick, a part of an ore dock at Duluth. While so engaged, and at about 2:30 o'clock p. m. of that day, he was so injured by the breaking of the boom stick of the derrick that he died the next day, leaving him surviving a widow, the plaintiff herein, and a daughter twenty months old. This action was brought in the district court of the county of

[1] Reported in 133 N. W. 87.

St. Louis to recover damages sustained by the widow and child by reason of his death, on the ground that it was caused by the negligence of the defendant.

The complaint, with other allegations of negligence, charged, in effect, that the defendant was negligent, in that it failed to furnish a derrick that was in a safe and proper condition and that it negligently caused the becket line to be improperly attached to the boom, thereby rendering it dangerous to those working with or near it. The answer denied any negligence on the part of the defendant, and alleged that the deceased was guilty of contributory negligence and assumed the risks. The plaintiff had a verdict for $5,000, and the defendant appealed from an order denying its blended motion for judgment notwithstanding the verdict or for a new trial.

1. The first contention of the defendant is that the evidence shows no negligence on the part of the defendant.

The evidence is practically conclusive that the derrick was constructed in the usual way, and consisted of one upright timber thirty-two feet long, called the "mast," the foot of which rested upon two long sills; that the boom stick was fourteen inches deep and twelve inches wide, and sixty-two feet ten inches long, and was made of sound timber, well seasoned, and the best obtainable; that the mast turned on the big socket on the bottom casting, and. the lower end of the boom stick was fastened at the end of the mast into a casting, and turned with the mast, that the boom stick was so fixed that it could be raised and lowered to the desired angle by "boom falls," which consisted of a set of blocks with a wire cable reeved through them, and the whole derrick mechanism was operated through systems of blocks, operated by a stationary steam engine; and, further, that the "becket line," or the end of the "fall line," by which the boom was raised and lowered, was attached to the boom stick about thirty-six feet from the bottom of the boom, and immediately below this point on the boom stick were two pieces of 2 x 4's nailed on each side thereof to keep the boom from sliding down.

There was also evidence tending to show that the derrick was brought upon the ore dock by the defendant, dismantled, and the derrick crew were directed to set it up and use it; that the boom and

becket line had been previously used by the defendant, and the marks of the becket line were plainly visible just above the 2 x 4's, indicating plainly the place where the becket line had been used by the defendant on former occasions; that the location and adjustment of the lower end of the becket line on the boom stick was a matter of importance, as one of its functions, when properly adjusted, was to counterbalance the upward and downward pull, thereby equalizing the strain on the boom stick and keeping it straight; that if the line was improperly adjusted the tendency would be to cause the boom stick to bend, rendering it unsafe; that the becket line, when the derrick was set up at the ore dock, was fastened to the boom stick at the precise point indicated by the marks thereon just above the 2 x 4's, but this was the wrong point on the boom stick to fasten the line, and it caused the boom stick to bend upward; that the defendant's superintendent in charge of the work frequently observed that the boom bent upward when a heavy load was being lifted; and, further, that the improper adjustment of the becket line caused the boom stick to break, whereby the deceased was killed.

We have not attempted to indicate all of the evidence bearing upon the question of the defendant's alleged negligence, but to indicate the important evidentiary facts relevant to the question which the evidence, taking the most favorable view of it for the plaintiff, tends to establish.

We are of the opinion that such evidentiary facts were sufficient to justify the jury in inferring therefrom the ultimate facts that the proper adjustment of the becket line was not a simple matter of detail, which could be done by any ordinary employee without skill or experience in adjusting such lines, but, on the contrary, that it was a matter directly affecting the safe operation of the derrick; that the defendant was chargeable with the duty of securing the proper adjustment of the line, so that the derrick, when set up and put in operation by its employees, would be safe, so far as such result could be secured by the exercise of due care on its part in adjusting the line; and that the defendant was guilty of negligence in the premises, which was the proximate cause of the death of the deceased.

We hold, upon a consideration of the evidence, that the special

facts of this case do not, as a matter of law, bring it within the rule that the duty of the master to furnish reasonably safe instrumentalities for his employees does not extend to such parts thereof which necessarily have to be adjusted in the course of *the use* of the implement (Gittens v. William Porten Co. 90 Minn. 512, 97 N. W. 378), but that they are sufficient to bring this case within the rule of Hamlin v. Lanquist & Illsley Co. 111 Minn. 491, 127 N. W. 490, 20 Am. & Eng. Ann. Cas. 893, and, further, that the question of the defendant's negligence was one of fact for the jury.

2. The other reasons urged by the defendant in support of its claim for judgment in its favor notwithstanding the verdict are that the evidence shows as a matter of law that the deceased was guilty of contributory negligence and assumed the risks. The evidence as to each of these grounds is practically the same and they may be considered together.

The clear preponderance of the evidence shows that the deceased was the foreman of the derrick crew, but one witness testified to the effect that he was simply a signalman; but it may be conceded for the purposes of this appeal that he was a foreman as well as a signalman. It does not, however, follow from this concession as a matter of law that he either assumed the risks or was guilty of contributory negligence.

There was evidence tending to show that the defendant's superintendent, Cruikshank, was present at least a part of the time when the derrick was being set up, and the deceased was subject to his orders; that two of the crew, other than the deceased, attached the becket line to the boom stick, and placed it at the point where it had been previously attached, as indicated by the line marks thereon. The boom stick bent when the derrick was put in operation, and the deceased had an opportunity to observe it; but whether he appreciated the risks of the situation is left by the record an open question. He was, however, on the morning of the accident, at about nine o'clock, told by the engineer that he thought the deceased had better move the becket line, as he (the engineer) was afraid it was going to break. The deceased replied that he would have to see the superintendent about it, and did go and see him; and subsequent to this conversation

the superintendent and the deceased were seen in front of the derrick, looking at it. The superintendent testified that he told the deceased that he could make the change in the line; but there was other evidence tending to show that he told the deceased that the line was all right where it was, and, further, that after the accident, and as the deceased was being carried into the office, the superintendent asked where the boom broke, and, upon being answered, "At the becket," he said it was too bad, and that the deceased spoke to him that morning about moving the line, and he told him he thought that he (the deceased) better not, as there was more spring below the becket than there was above it.

Upon the whole evidence, and especially in view of the short time, some six hours, at most, intervening between the information as to the safety of the derrick, received by the deceased from the engineer, and the happening of the accident, the prompt report to the superintendent, and the advice received from him, we are of the opinion, and so hold, that the question of the deceased's contributory negligence and whether he assumed the risks were each a question of fact, to be decided by the jury and not by the trial judge.

3. Errors are assigned with reference to the instructions to the jury. We find no reversible error in any of them.

Order affirmed.